IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEWAYNE JACKSON, FN-5054, )
    Petitioner, )
     )
    v. )  2:09-cv-1063
     )
RAYMOND M. LAWLER, et al., )
    Respondents. )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Dewayne Jackson for a writ of habeas corpus be dismissed, and that because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability be denied.

II. Report:

Dewayme Jackson, an inmate at the State Correctional Institution at Huntingdon has presented a petition for a writ of habeas corpus. In an Order entered on August 13, 2009, the respondents and the District Attorney of Allegheny County were directed to answer and show cause, if any, why the relief sought should not be granted.

Jackson is presently serving a life sentence with a consecutive five to fifteen year sentence imposed following his conviction, by a jury, of first degree murder and robbery at Nos. CC 20007527 and 20016994, in the Court of Common Pleas of Allegheny County, Pennsylvania.

This sentence was imposed on July 13, 2001.[1]

An appeal was taken to the Superior Court in which the issues presented were:

I. Whether trial counsel was ineffective in failing to subpoena and present at trial the highly exculpatory testimony of Ms. Tennell Dorsey, where this testimony would have flatly contradicted the testimony the only prosecution witness who claimed to have witnessed Mr. Jackson shoot the victim, by establishing that she and Ms. Cannon did not even arrive at the scene until after the shooting had occurred and after police had already secured the scene. Alternatively, whether remand for an evidentiary hearing is required to permit the parties to develop a record.

II. Whether trial or prior appellate counsel were ineffective in failing to seek relief based upon the subsequent nolle prosse of criminal charges against prosecution witness Dee Ann Cannon, where the dismissal of charges against Ms. Cannon belied her testimony that there had been no agreement or firm expectation for leniency and where it exposed her motive to testify falsely. Alternatively, whether Mr. Jackson is entitled to a new trial on the basis of this new and critical exculpatory evidence.

III. Whether the trial court erred in permitting into evidence the highly inflammatory, unfairly prejudicial and irrelevant evidence from prosecution witness Melkeye Brown that she had been threatened, that bricks had been thrown at her house, and that she had entered a witness protection program, where no evidence existed linking any such activities to Mr. Jackson and where this testimony was irrelevant to any legitimate issues in the case.

IV. Whether the trial court erred in refusing to permit defense testimony that the victim had been shot on a prior occasion and that other persons had a motive to harm the victim insofar as he was known to be a police informant, where this evidence was admissible to demonstrate motive on the part of others to do harm to the victim.[2]

On May 12, 2003, the judgment of sentence was affirmed.[3] A petition for allowance of

---

[1] See: Petition at ¶¶ 1-6. The answer and the record of the Court of Common Pleas disclose that sentence was imposed on August 28, 2001.

[2] See: Answer of the Commonwealth at p.444.

[3] See: Answer of the Commonwealth at pp. 550-562.

appeal to the Pennsylvania Supreme Court was filed in which the following issue was raised:

> Whether the Superior Court erred in failing to reverse the trial court's admission of highly inflammatory, unfairly prejudicial and irrelevant testimony from a prosecution eyewitness that she had been threatened, that bricks had been thrown at her house, that she had been forced to relocate, and that she had entered a witness protection program, where no evidence existed linking any such activities to Mr. Jackson, where this testimony was irrelevant to any legitimate issue in the case, where the evidence of guilt of homicide was very close, and where the admission of this evidence deprived Mr. Jackson of his Constitutional rights to due process, fair trial, presumption of innocence and fundamental fairness.
>
> And whether in so finding the Superior Court ruled contrary to well-settled precedent establishing that threats against a witness are not admissible as an admission of guilt against an accused unless the accused is linked to the making of the threat. And whether in so ruling the Superior Court misapplied or misapprehended the meaning and application of the evidentiary rule regarding "opening the door."[4]

On March 24, 2004, leave to appeal was granted[5], briefs were filed, argument held and on October 7, 2004, the Supreme Court dismissed the grant of leave to appeal as having been improvidently granted.[6]

On November 10, 2005, petitioner file a post-conviction petition. That petition was dismissed on February 1, 2008.[7] An appeal was taken to the Superior Court in which the issues raised were:

> I. Whether trial counsel was ineffective in failing to secure for trial highly exculpatory and available testimony which would have exposed the falsity of the testimony of the only prosecution witness who claimed to have witnessed the shooting.

---

[4] See: Answer of the Commonwealth at p.601.

[5] See: Answer of the Commonwealth at p. 655.

[6] See: Answer of the Commonwealth at p.782.

[7] See: Answer of the Commonwealth at p.1009.

3

> II. Whether Mr. Jackson is entitled to a new trial given the post-trial dismissal of felony charges against the prosecution's key witness, where the dismissal demonstrated the existence of a leniency agreement, belied testimony that there had been no agreement for leniency, and exposed an urgent motive to testify falsely.
>
> III. Whether the Commonwealth committed prosecutorial misconduct in failing to fully and timely disclose the extent and magnitude of the leniency agreement with its primary witness.[8]

On February 20, 2009, the Superior Court affirmed the denial of post-conviction relief.[9]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the issues presented were:

> I. Whether the Superior Court erred in requiring the appellant to demonstrate prejudice flowing from trial counsel's failure to call an eyewitness by "proving that a reasonable probability of acquittal existed but for" counsel's ineffectiveness. And whether that ruling is contrary to a long line of authority requiring the less stringent standard of "some showing that the absent witness' testimony would have been beneficial or helpful." And whether the Superior Court erred in concluding that the appellant was not entitled to a new trial based upon the missing testimony under either standard of prejudice.
>
> II. Whether appellant is entitled to a new trial given the post-trial dismissal of felony charges against the prosecution's key witness where the dismissal demonstrated the existence of a leniency agreement, belied her testimony that there had been no agreement for leniency, and exposed her urgent motive to testify falsely.
>
> III. Whether the Commonwealth committed prosecutorial misconduct in failing to fully and timely disclose the extent and magnitude of the leniency agreement with its primary witness.[10]

---

[8] See: Answer of the Commonwealth at p.1043.

[9] See: Answer of the Commonwealth at pp.1177-1188.

[10] See: Answer of the Commonwealth at p.1197.

On July 22, 2009, leave to appeal was denied.[11]

In the instant petition executed on August 6, 2009, Jackson contends he is entitled to relief on the following grounds:

> 1. Trial counsel was ineffective in failing to secure the presence at trial of Ms. Tennell Dorsey. Ms. Dorsey['s] testimony was highly exculpatory and would have exposed the falsity of the testimony of Dee Ann Cannon, the only prosecution witness who claimed to have witnessed Mr. Jackson shoot the victim. Ms. Dorsey['s] testimony that she and Ms. Cannon had not even arrived at the scene of the shooting until after the shooting had occurred and police had already secured the scene would have created a serious reasonable doubt.
>
> 2. Trial counsel was ineffective in failing to timely act on post-trial evidence of a formal agreement between Dee Ann Cannon and the Commonwealth and/or newly discovered evidence.  Mr. Jackson is entitled to a new trial on the basis of the post-trial dismissal of all charges against Ms. Cannon, since the dismissal demonstrated the existence of an agreement, belied her testimony that there had been no agreement or expectation for leniency, and exposed her urgent and corrupt motive to testify falsely coupled with the testimony of Ms. Dorsey to the effect that Ms. Cannon had not even been present at the shooting.
>
> 3. The Commonwealth committed prosecutorial misconduct in failing to fully and timely disclose its leniency agreement with Dee Ann Cannon, its primary witness.
>
> 4. The trial court erred in overruling trial counsel's objections to evidence elicited by the prosecutor from prosecution witness Melkeya Brown who testified on redirect examination that she had been threatened, that bricks had been thrown at her home, and that as a result of these warnings she had entered the witness protection program. Appellant argues that in the absence of any evidence linking these occurrences to him their introduction was both irrelevant and highly prejudicial.[12]

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or

---

[11] See: Answer of the Commonwealth at p. 1279.

[12] See: Petition filed in this Court at docket No.3.

> that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In <u>Hameen v. Delaware</u>, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in <u>Williams v. Taylor</u> held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  The Court in <u>Williams v. Taylor</u> made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, the Commonwealth concedes that the claims are properly before this Court for consideration.[13]

The background to this prosecution is set forth in the in the February 20, 2009 Memorandum of the Superior Court:

> In the early morning hours of August 27, 1997, Barbara Flewellen Brown ("Brown") and her daughter Melkeya Brown ("Melkeya"), were celebrating Melkeya's 21st birthday at a tavern in the Homewood neighborhood of Pittsburgh. While traveling by foot from one tavern to a second one, the women were accosted by appellant at gunpoint, who demanded a necklace that Melkeya was wearing. Brown recognized appellant as someone from the neighborhood because he had been to her home, and she knew him by his nickname, "Boogie."  Brown scolded appellant about robbing them while Melkeya relinquished the necklace. Meanwhile, the murder victim, who was standing across the street with a group of young men, yelled at appellant to leave the two women alone. Brown then watched appellant cross the street toward the victim, still brandishing the firearm

---

[13] See: Answer of the Commonwealth at p. 20.

at his side. As she and Melkeya turned to walk away, Brown heard the victim and appellant arguing. Seconds later, Brown heard a gunshot and turned to see appellant running away from the crime scene[14]

The first issue which the petitioner raises here is that trial counsel was ineffective in failing to secure the presence at trial of Ms. Tenell Dorsey whose testimony he contends was exculpatory and would have exposed the falsity of the testimony of Dee Ann Cannon, the only prosecution witness who claimed to have witnessed Mr. Jackson shoot the victim. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in

---

[14] See: Answer of the Commonwealth at pp. 1177-1178.

order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

At the trial, Dee Ann Cannon was called upon to testify on behalf of the Commonwealth.[15] Specifically Cannon testified that she was celebrating her birthday with her cousin Tennell Dorsey (p 145, 155, 157); that Dorsey drove away as soon as the shooting commenced (p.164); that she observed the petitioner whom she saw on a daily basis with Todd Snyder (p.146); that the petitioner and Todd were arguing (p.147, 160); that she heard shots, observed the petitioner with a gun in his hands and Todd laying on some steps (p.148, 150-151);that the petitioner then threatened her if she was to say anything (p.149, 151, 167); that she anonymously called the police and related that the petitioner had committed the crime (p.152) and that no promises had been made to her regarding criminal charges pending against her in exchange for her testimony against the petitioner (p.154, 175).

On October 18, 2000. Dorsey was interviewed by the police and they reported her stating that "she adamantly denied witnessing anything" (p.816). In addition, during his closing argument the petitioner's counsel asserted the Commonwealth's failure to call Dorsey as a corroborating witness (p.322, 873). At the post-conviction hearing commencing on August 16, 2007, defense counsel testified that he was aware of the October 18, 2000 interview (p.863); that

---

[15] See: Answer of the Commonwealth at pp. 143-176. All reference to testimony are marked with the page numbers of the Commonwealth's answer and not the transcript page number.

he had no recollection of why he did not subpoena Dorsey (p.865); that Cannon absolutely denied that the prosecutor had made any promise of leniency in exchange for her testimony (p.866, 868) and that he subsequently learned that the case against Cannon was nolle prossed (p. 867, 869). At that same hearing Tenel Dorsey was also called as a witness and testified that since she and Cannon were together and arrived after the shooting occurred there was no way Cannon could have observed the incident (p.918, 920, 921).

At the trial, Barbara Brown testified that she and her daughter were out on the evening in question (p..85); that she observed the petitioner with whom she was familiar emerging from an alley (p.86, 102); that he drew a gun on Ms. Brown and her daughter and demanded the daughter's gold chain (p. 86-87); that the petitioner then walked across the street (p.87); that she heard an argument and then a gunshot (p.87, 90); that the petitioner shot the victim (p.91, 110-111) and that she did not observe any other individual with a gun (p.93).

Ms. Brown's daughter testified that the defendant drew a gun and demanded her necklace (p.120, 123); that he then crossed the street and engaged in an argument with another individual (p.120, 132-133, 135); that she then heard gunshots (p.121); that she is in the witness protection program because bricks were thrown through the window of her house (p.139) and that she did not know who threatened her (p.142).

Dee Ann Cannon testified that on the night in question she saw the petitioner whom she had known for several years (p.146); that she heard him arguing with the victim (p.147); that she heard several shots (p.148); that the petitioner threatened to kill her if she related facts about the incident (p.149, 152, 167); that she recalled the petitioner shooting the victim and standing over him (p.150-151, 162); that she anonymously informed the police of the identity of the shooter

(p.151,152) and that no promises regarding a criminal case pending against her were offered in exchange for her testimony (p.154)

At the trial, the petitioner testified and denied the robbery and the homicide (p. 294-297).

The petitioner now argues that although subpoenaed to testify, Tenel Dorsey who would have corroborated his version of the events, did not appear and counsel did nothing further to compel her appearance. At the post-conviction hearing which commenced on August 16, 2007, trial counsel testified that the defense's theory of the case was that the petitioner was not present when the events occurred (p.860); that he did receive the police report of the interview with Dorsey (p.862-863); that the report contradicts the testimony of the Commonwealth's primary witness (p.863) and that he had no record of having subpoenaed Dorsey although Jackson apparently believed that she had been subpoenaed (p.865, 874, 875).

Tenel Dorsey was also called to testify. She testified that she did not know the petitioner (p.914); that at the time of the incident she was driving DeAnn Brown to pick up her son (p.915) and that after Brown retrieved her son they drove to Brown's home (p.919); that she was always within sight of Brown (p.920) and that she did not see any of the events (p.921). That is, the gist of her testimony was that she did not observe any incident involving Brown and/or the petitioner.

It is argued that the testimony Dorsey would have offered might have served to challenge the credibility of Cannon. However, her testimony in no way contradicts the highly incriminating testimony of both Browns. As the Superior Court observed in reviewing this matter:

> Cannon was the only eyewitness who testified unambiguously that she actually saw appellant shoot the victim. Dorsey gave a statement to police that she and Cannon arrived at the crime scene long after the crime had actually been committed and that they never witnessed anything. Dorsey testified at the PCRA hearing that she had never been contracted to testify at appellant's trial. Appellant

argues that counsel was ineffective for failing to secure Dorsey's testimony so that it could be used to impeach Cannon's testimony.

> Simply stated, we find that appellant's argument fails to satisfy the prejudice prong of the test for ineffectiveness. Even if Dorsey had testified and Cannon's testimony were completely discounted by the jury, there was still the identification testimony of eyewitnesses Brown and Melkeya. Brown explicitly testified that she knew appellant from past encounters and saw him at close range during the robbery; thus, there was little chance of misidentification. Although neither of these witnesses specifically stated that they saw appellant actually shoot the victim, they both described circumstances under which the jury could justifiably conclude that appellant shot the victim. We cannot state that but for the missing testimony of Dorsey, appellant likely would not have been convicted, and we find no ineffectiveness on the part of trial counsel.[16]

While clearly, it would have been preferable to call Dorsey as a witness, her testimony in no way would have negated the testimony of the Browns, and under these circumstances it cannot be concluded that the state courts incorrectly applied Supreme Court precedent in determining that counsel was not ineffective in this respect.

The petitioner also argues that counsel was ineffective for failing to act on post-trial evidence that a formal agreement between Cannon and the Commonwealth existed in exchange for her testimony and that the Commonwealth failed in its obligation to make the defense aware of the leniency agreement.

As observed above, at trial, Cannon unequivocally testified that no leniency agreement existed between her and the Commonwealth (p.154,175). In its July 9, 2001 petition to dismiss the charges pending against Cannon the Commonwealth represented to the court:

> Commonwealth does not believe drugs were possessed by defendant.
> Additionally, defendant cooperated and testified in the homicide trial of Dewayne

---

[16] See: answer of the Commonwealth at pp.1182-1183, and the footnote thereto which states "a police witness testified that appellant admitted to taking the necklace from Melkeya [Brown] on the night in question, albeit not at gunpoint.

>Jackson...  The Commonwealth no longer interested in prosecution of this case for the above states reasons.[17]

Other than the two month temporal proximity between his trial and the dismissal of the charges against Cannon, the petitioner has provided no evidence countering her representation or the testimony of the prosecutor that no promises had been made to her in exchange for her testimony. In his closing argument to the jury, trial counsel cast some suspicion on Cannon's motive for testifying (p.319), and counsel cannot be found deficient for failing to anticipate events which occurred two months later.

Additionally, the petitioner argues that the prosecution was aware of the existence of a "deal" with Cannon but failed to disclose it to the defense in violation of Brady v. Maryland, 373 U.S. 83 (1963). At the post-conviction hearing the prosecutor unequivocally denied that he was aware of any leniency deal having been made with Cannon other than a representation that at the time of sentencing, her cooperation would be brought to the attention of the court, and that at the time of the petitioner's trial he had no idea that he would eventually move to dismiss the charges against Cannon (p.882-883). Thus, again, even at this date there is nothing to support the petitioner's allegations that a promise had been made in exchange for Cannon's testimony against him other than his wishful thinking. Thus, again, there is nothing in these claims to demonstrate that petitioner's conviction was improperly secured in violation of Supreme Court case law.

Finally, the petitioner argues that the trial court erred in admitting, over objection, the testimony of Melkeya Brown regarding threats that had been made against her.

---

[17] See: Answer of the Commonwealth at p.817.

First, the context in which this testimony was elicited must be noted. When first called to testify, Melkeya Brown made no mention of the threats against her. On cross-examination she was asked if she voluntarily reported the events which had occurred to the police, and denied having done so. Finally, on redirect examination she was asked why she had failed to do so, and responded that her reluctance was a result of threats which had been made to her.(p.136-140). In reviewing this allegation the Superior Court wrote:

> The testimony is clear that the witness did not know who threatened her but was sufficiently afraid that she did not want to make any report to police regarding the robbery and shooting.  Under these circumstances, we find that this evidence was properly admitted for the purpose of explaining her failure to contact authorities in response to a question raised by the defense...
>
> [ T]he testimony of the witness regarding threats made against her was not offered as an admission of Appellant's guilt.  Rather, the Commonwealth asked these questions to explain her answers on cross-examination about why she did not go to the police...  the evidence was admissible for another specific purpose. Moreover, the testimony was clear that this witness did not know who threatened her, and she specifically said it was not Appellant. We are thus not persuaded that the prejudice from this testimony outweighed its probative value. Accordingly,[under Pennsylvania Supreme Court law]  we do not find that there has been a clear abuse of discretion by the trial court in allowing the testimony... (p.554-556).

This determination, made by the Superior Court on the basis of state law, cannot form a basis for a contrary decision here. <u>Taylor v. Horn</u>, 504 F.3d 416 (3d Cir.2007), cert. denied 129 S.Ct. 92 (2008).

Accordingly, because there is so showing here that the petitioner's conviction was obtained in any manner contrary to existing case law as determined by the Supreme Court, the petition is without merit and it is recommended that it be dismissed. Additionally, because reasonable jurists could not conclude that a basis for appeal exists it is recommended that a

certificate of appealability be denied.

      Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

                                                s/Robert C. Mitchell,

Entered: November 10, 2009                    United States Magistrate Judge